**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                          **Case No. 8:21-CR-16-WFJ-SPF**

**RONI LINARES**
_____/

**SENTENCING MEMORANDUM IN SUPPORT OF A**
**REASONABLE SENTENCE OF 87 MONTHS**

COMES NOW, the Defendant, RONI LINARES, by undersigned counsel and pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(a), moves this Honorable Court to grant the government's U.S.S.G. § 5K1.1 "substantial assistance" motion and impose a reasonable sentence of 87 months' imprisonment to be followed by a 60-month term of supervised release. As grounds in support, Mr. Linares shows:

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Linares is a 25-year-old nonviolent Guatemalan national born into a "life with no options." PSR ¶¶37, 39. Born on December 13, 1995, in Escuintla, Guatemala to a physically abusive father and a mother who abandoned him, Mr. Linares has suffered a lifetime of abuse, neglect, poverty, and substance abuse. PSR ¶¶37-41, 49-50. Mr. Linares's father, Roni Linares Mijanos, was a physically and emotionally abusive person who relentlessly battered and belittled Mr. Linares's mother, Victoria Garcia Abauta, in the presence of their children. PSR ¶37. So severe

1

was the abuse that when Mr. Linares was 2 years old, his mother abandoned him and fled to the United States, leaving Mr. Linares in the care of his abusive father. *Id*.

Two years after her flight from Guatemala, feeling guilty and afraid for her son, Mr. Linares's mother returned to the family home hoping to shelter Mr. Linares from his father's maltreatment. *Id*. Her efforts were fruitless, and she and Mr. Linares continued to suffer both physical and emotional abuse. PSR ¶¶37-39. Besides physically beating Mr. Linares and his younger siblings, his father was also emotionally abusive, often threatening to cut off their hands or send them to jail. PSR ¶38. Mr. Linares's mother also victimized him by blaming him for his father's behavior, consistently pointing out that she had returned to save him and making sure he knew that but for him she would be living a better life. PSR ¶37.

When Mr. Linares was 7, his father went to prison in Mexico for two to three years for trafficking drugs. PSR ¶38. Upon his return, the abuse continued until Mr. Linares's father died; Mr. Linares was 13 years old. *Id.* He did not mourn his father's death, and still hates him today for all the pain he caused him, his mother, and his siblings. PSR ¶39. Although his father's death ended the physical abuse, Mr. Linares's life did not improve. *Id*.

Even though Mr. Linares was still a child himself, he was the oldest of his siblings, and so after his father's unexpected death he was compelled to assume the role of head of the household. *Id.* His family was extremely poor before his father's

2

death, and their financial circumstances worsened after his death. *Id*. If Mr. Linares did not work, there would be no food to eat. *Id*. As a thirteen-year-old 6th grader, Mr. Linares was forced to leave school to work full time to shoulder the burden of financially supporting his mother and three siblings. PSR ¶¶39, 51.

Because of the past abuses he had suffered, coupled with the added financial pressures, Mr. Linares turned to drugs and alcohol as a coping mechanism. PSR ¶¶49-50. At age 13 he consumed alcohol, by 14 he was smoking marijuana, and by 15 he abused both powder and crack cocaine. PSR ¶49. Over time, Mr. Linares went from drinking and smoking marijuana on the weekends to drinking five times a week and smoking marijuana daily to calm his anxiety. *Id.* Mr. Linares further reports abusing cocaine while intoxicated at least two times a week. *Id*. As described by Mr. Linares, he abused drugs and alcohol "to help him escape the bad memories in his household," which he "want[ed] to forget." PSR ¶50. Mr. Linares knew that his drug use was affecting his ability to put food on the table, and he had a desire to stop using drugs, but he did "not know[ ] how to do so." *Id.*

Despite his significant substance abuse and emotional issues, Mr. Linares has worked since the age of 9 to support himself and his family as a fisherman. PSR ¶52. Because of the unpredictability of fishing his income would fluctuate. *Id.* Prior to his arrest, on average Mr. Linares earned between 2,000 and 3,000 Mexican pesos (approximately $100.62 to $150.92 USD) bi-weekly or $2,414.88 to $3,622.08

3

annually. *Id.* With a salary every other week no greater than $150.92 USD, Mr. Linares found it extremely difficult to support himself and his family. *Id.* It was this financial necessity which made Mr. Linares susceptible to becoming involved in the maritime drug trafficking conspiracy bringing him before this Court as a first-time offender. PSR ¶18.

In December 2021, struggling to earn enough money to support his family and battling his substance abuse demons, Mr. Linares was approached by a person representing a drug trafficking cartel who offered $40,000 USD to work as a mariner tasked with picking up a quantity of cocaine and a crew of drug transporters off the coast of Central America *Id.* In the best of times, it would have taken Mr. Linares over 11 years of hard labor as a fisherman to earn $40,000. PSR ¶52. For Mr. Linares, $40,000 represented a significant and life-changing way to provide for himself and his family. PSR ¶18.

With no upfront payment but the promise of future riches, the 25-year-old Mr. Linares boarded, with his brother in-law Israel Lavariega Antonio, a go-fast vessel that left the coast of Central America and rendezvoused with another vessel loaded with bales of wrapped cocaine alongside a two-man Colombian crew, consisting of Jailer Quinones Castro, Jaime Fernando Garcia Chere, and Pricilian Garces Angulo. PSR ¶10. Tragically for Mr. Linares and his family, as the go-fast vessel was returning to Central America with its recently acquired contraband and Colombian

crew, the vessel was apprehended by the United States Coast Guard. PSR ¶¶11-12. The critical promised financial payout never materialized. PSR ¶18.

Specifically, on December 28, 2020, while traveling in the international waters around 213 nautical miles south of Tulate, Guatemala, the go-fast vessel was spotted by a military patrol aircraft. PSR ¶10. A helicopter and a small boat were launched from a nearby United States Coast Guard cutter and the vessel was apprehended. PSR ¶¶11-12. Aboard the vessel, the Coast Guard discovered the now five-man crew and 36 bales of cocaine. PSR ¶¶10, 14. The 36 bales of cocaine were determined to weigh over 450 KG. PSR ¶¶14, 21.

The five-man crew was brought to the Middle District of Florida and, on January 13, 2021, were charged by indictment with conspiracy to possess with the intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States and with possession with the intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. PSR ¶¶1-3.

Mr. Linares, upon appointment of counsel, immediately cooperated with the government and truthfully debriefed on his and others' involvement in the conspiracy. Doc. 214. On June 23, 2021, pursuant to a written plea agreement, which contained a cooperation provision, Mr. Linares entered a guilty plea to the conspiracy charge (Count One). PSR ¶¶5-8. On the same date, this Court accepted

5

Mr. Linares's guilty plea and adjudicated him guilty. PSR ¶5. Mr. Linares's cooperative efforts contributed to three of his coconspirators pleading guilty and cooperating with the Government. His codefendant and coconspirators Priciliano Garces Angulo proceeded to trial and was convicted. Mr. Linares's sentencing hearing is set for Friday, May 27, 2022, at 10:00 a.m. Doc. 169.

## GUIDELINE CALCULATIONS

Because he was involved in a drug transportation conspiracy involving more than 450 KG of cocaine, Mr. Linares's base offense level is 38. PSR ¶21. With a 2-level "safety value" and a 3-level "acceptance of responsibility" reduction, Mr. Linares's total offense level is 33. PSR ¶¶21, 27-28, 29.

With no prior arrests or convictions, Mr. Linares has zero criminal history points and is correctly classified as a criminal history category I offender. PSR ¶¶31-36. With a total offense level of 33 and criminal history category I, Mr. Linares's advisory guideline imprisonment range is 135 to 168 months (11 years, 3 months – 14 years). On May 5, 2022, the Government filed a 2-level "substantial assistance" motion from the government, which if granted by this Court, would make his low-end advisory term of imprisonment 108 months (9 years). Doc. 214.

Mr. Linares cooperative efforts lead to three of his four codefendants to enter guilty pleas and to cooperate with the Government. *Id.* He further was prepped by the Government to testify against Mr. Garces Angulo. He was transported to Court

to testify and would have likely been called by the Government in rebuttal. However, Mr. Garces Angulo did not put on a case, denying Mr. Linares the opportunity to testify against him. His defense counsel very much knew Mr. Linares was at the courthouse to testify against his client, before deciding to not put on a defense case.

Based on Mr. Linares's cooperative efforts it is respectfully submitted that a 3 or 4-level §5K1.1 reduction would more appropriately reflect the extent of his "substantial assistance" to the Government. A 3-level reduction would cause a low-end term of imprisonment of 97 months and 4-level reduction would cause a low-end term of imprisonment of 87 months.

<b>A SENTENCE OF 87 MONTHS IS REASONABLE</b>

As a 25-year-old extremely poor and emotionally troubled first-time nonviolent offender who was one of four mariners on a go-fast vessel during the transportation of a quantity of cocaine, a sentence of 87 months is "sufficient but not greater than necessary" to accomplish the purposes of sentencing enumerated in 18 U.S.C. § 3553(a). Mr. Linares is before this Court as an impoverished individual who, while suffering from significant childhood trauma and drug addiction, out of financial necessity, agreed to participate in the transportation of a quantity of cocaine aboard a four-person go-fast style vessel subject to the jurisdiction of the United States. Since his arrest he has "accepted responsibility" and provided "substantial assistance."

He was promised $40,000 to participate as a mariner during the transportation of cocaine on the high seas. This was a greater sum of money than Mr. Linares could earn over 11 years of hard labor as a fisherman. Given the difficult life he was born into, the financial need was too great and the promise of temporary financial security too strong. As a result, Mr. Linares participated in unlawful activity. His participation did not lead to life-changing prosperity. Instead, the money he was tempted with never materialized and now he faces the prospect of serving a significant term of imprisonment in a foreign land, thousands of miles away from his family.

It is suspected this Court will be most troubled by the large quantity of cocaine Mr. Linares participated in transporting. However, Mr. Linares had no control over the quantity of cocaine being transported nor was he ever advised how much cocaine was being transported. The question for this Court is how much Mr. Linares (and, by extension, his family) must pay for his succumbing to the overwhelming temptation of significant wealth during a period of severe financial, emotional, and substance abuse struggle?

Mr. Linares has accepted full responsibility for his role in the offense and has sought to mitigate his wrongs by pleading guilty and cooperating promptly. Given Mr. Linares's lack of any prior criminal history, the nonviolent nature of the offense, and the life-changing financial gain he was tempted with in exchange for his role as

8

a low-level drug courier, it is respectfully submitted that a sentence of 87 months is reasonable and not greater than necessary to accomplish the purposes of sentencing.

A sentence of 87 months, which is just 2 levels below Mr. Linares's otherwise advisory low-end range after a 2-level § 5K1.1 departure, is a significant sentence for a foreign national in a foreign land whose family will continue to suffer extreme poverty for over half a decade without the breadwinner of the family. Such a sentence will foster respect for the law, will sufficiently deter Mr. Linares and others generally, and will appropriately reflect the seriousness of the offense and punish his unlawful conduct which has been mitigated by his cooperative efforts.

WHEREFORE, Mr. Linares moves this Honorable Court to grant the government's U.S.S.G. § 5K1.1 motion, to vary downward an additional two levels, and to impose a low-end sentence of 87 months' incarceration followed by a 60-month term of supervised release.

DATED this 23rd day of May 2022.

Respectfully submitted,

A. FITZGERAL HALL, Esq.
FEDERAL DEFENDER

/s/ Adam B. Allen
Adam B. Allen, Esq.
Florida Bar No.0998184
Assistant Federal Defender
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Adam_Allen@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of May 2022, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to:

AUSA Mathew Del Mastro.

/s/ Adam B. Allen
Adam B. Allen, Esq.
Assistant Federal Defender

10